Good morning, your honors. Todd Burns on behalf of Mr. Cruz-Martinez. I'd like to focus my argument this morning on the complementary issues of the Rule 613 prior and consistent statement issue and the jury instruction issue. I'd like to begin by noting that when Mr. Cruz-Martinez was arrested, he was 18 years old. The case agent who interrogated him said he was very cooperative, he was honest, and he was straightforward. Mr. Cruz-Martinez said to the case agent that he had been paid to pick up a car in Tijuana and drive it back to Los Angeles. He had been told, he said to the case agent, that there would be stuff in the vehicle. Of course, there's a different word to use, it's a more colorful slang term. Actually, it's a four-letter word. According to the case agent's notes, the case agent then asked Mr. Cruz-Martinez, do you understand that stuff could be, or mean to be, heroin, cocaine, or marijuana? To which Mr. Cruz-Martinez responded, again, according to case agent's notes, yes. Now, throughout the trial, and even up into the government's response brief here, the government has kind of hedged on those notes in two ways. Well, in one respect, they've gone totally contrary to him, and at times they've said, well, Mr. Cruz-Martinez admitted he knew that there were drugs in the car. At other times, they've been a little bit more subtle about it, and had testimony to the effect of, when the agent, Agent Grillo, offered these options as to what the drugs could be, that Mr. Cruz-Martinez effectively said, yes, that's what I understood stuff to be. But of course, that's not what the notes said. And the record is rife with examples, as I've cited throughout the briefs and recited in the opening brief. In the opening argument at ER 163, the government made such an argument. In Agent Grillo's testimony at ER 283, Agent Grillo stated explicitly that Mr. Cruz-Martinez said he knew there were drugs in the car. When Agent Hang, the other case agent, testified, she made the more subtle argument as to what Mr. Cruz-Martinez said. In closing argument, the government made the more subtle argument. The government's response brief in this case, it made the argument more bluntly, once again, on pages 5 and 17. I sought to introduce the notes of the interview, which the agent said were accurate, were made at the time, and the only record of the interview, the interrogation of Mr. Cruz-Martinez, as to what exactly was said during the interrogation. The defense was, this was an 18-year-old kid. He got himself into something stupid. He was being reckless, perhaps, but he didn't actually know that there was a controlled substance in the vehicle, and that's evident from his statements. The district court prohibited me from introducing the notes, even though they were clearly inconsistent. But what did he think this stuff meant, then? Well, it was never really clear as to what exactly he thought it meant. I think he thought it could be a variety of things. One of which was illegal drugs. That's possible. So he possibly suspected that, but as we know under Vallejo, suspicion is not enough. It's got to be knowledge. It could have been a listed chemical. There are a lot of listed chemicals coming across the border. People smuggle birds across the border. People smuggle prescription drugs across the border, which aren't necessarily controlled substances, but they are something that could be stuff that they shouldn't be bringing across the border. In which case, he could be convicted of a 545, an 18 U.S.C. 545 offense for illegal importation. Maybe even guidelines would get him for the marijuana, but not for the two offenses here. At any rate, the government essentially concedes that the district court erred by not admitting the notes. The government's first argument in the harmless stereotype context is, well, nevertheless, through cross-examination, Mr. Cruz-Martinez was able to elicit kind of what the notes said. Well, that's not really true. Mr. Cruz-Martinez was able to elicit the substance of the notes. That's not true. I was never able to elicit the substance of the notes. The district court's ruling was a little bit confused. She said basically, you can cross on the notes, but you can't bring in the substance of the notes. Which is kind of hard for me to do. And if you notice as you read through the cross-examination, I'm struggling with exactly what the boundaries are in that context. But it's clear that the district court thought throughout that the notes were hearsay, and that their contents and the notes themselves were inadmissible. And I was never allowed to have the contents read in, and I was never allowed to introduce the notes. The government's second argument is that, well, it doesn't really matter because he would have been convicted anyway, basically. And I think that there are a lot of things that shoot that down. Number one, well, their second argument is more to the effect of that I did get the contents out anyway, even if I didn't or I got the gist out anyway if I didn't get the contents out. And I think that there are a lot of things that shoot that down. Number one, the district court remarked herself during my cross-examination that my questioning was confusing. My questioning was confusing because the ruling was confusing. It was wrong, number one, and it was confusing to know how to operate within it. Again, I think if you read through the cross-examination, you'll see that. Number two, the juror notes, which are excerpt of records 517 and 522, both deal with exactly this issue. The juror notes came back. The first one they said is, we request Agent Grillo's testimony in terms of the word stuff. When he asked the defendant about this word, the second question is, we would like Agent Grillo's first testimony in the prosecutor's question about the interview between him and the defendant regarding the word stuff and the rest of the sentence. That's exactly what the jury was focused on. It was what the trial was all about. So to say that, well, the contents came out and the jury understood it, it's just not accurate. They didn't understand it. What exactly were you offering the notes to do then? Well, to impeach the agent as far as what Mr. Cruz-Martinez said as far as his knowledge. What of the notes was inconsistent? Well, what the agent specifically said that was the most inconsistent is an excerpt of record 283 in which he testified that Mr. Cruz-Martinez specifically said, I knew there were drugs in the car. That is clearly inconsistent with the notes which say he said that he knew there would be stuff in the car. And what's interesting is drugs are originally written on the notes. This is an excerpt of record one. It originally says drugs. Drugs is scribbled out, and up above it is written stuff, because that's what he said. He didn't say he knew there would be drugs in the car. He said he knew there would be stuff in the car. And then Agent Perlow offered this option of, well, stuff could be this, that, or the other thing. Could be or mean to be this, that, or the other thing, to which Mr. Cruz-Martinez said, yes, it could be that. But he never followed up, well, did you understand it to be that? Could it be other things? Could it be listed chemicals? Could it be a bird? Could it be alcohol? Could you be bringing a keg of alcohol up to the United States for you and your friends because they're 18 years old? It could be all sorts of other things. The third thing which shuts down the government's argument as to the fact that the jury understood what was in the notes and the point I was trying to make in the cross-examination is not only did the two juror notes come back on just this topic, the jury was out for four hours and 20 minutes. This wasn't some easy knockdown case for them. They were out for a long time considering this, and apparently, judging by those notes, focusing on exactly the issue that would have been clarified through introduction of the notes. Finally, I think some of the case law makes this point better than I can. In Gordon, the Supreme Court case I cite at 344 U.S. 421, the Supreme Court says, well, even if the substance of prior and consistent statements comes out, a document that shows the prior and consistent statement should really be admitted. The first thing they do is they analogize to the best evidence rule, and they say, the elementary wisdom of the best evidence rule rests on the fact that the document is a more reliable, complete, and accurate source of the information as to its contents and meaning than anyone's description. And this is no less true as to the extent and circumstances of the contradiction. The Supreme Court also goes on to say, well, of course, the document emphasizes the contradiction, shows the significance of the contradiction. The Second Circuit case Strother, which I cite, makes somewhat the same point. It says the document is more persuasive. The D.C. Circuit Court case, which I cite, Broadus, says even if the document is cumulative, a testimony should come in. All those things indicate that this wasn't harmless. The jury didn't get the point through the cross-examination, and even if they did, kind of, the document should have come in. Well, the government says, anyway, we could have gotten them with a dual instruction. Well, they didn't have a dual instruction. As a matter of fact, we had something quite different than a dual instruction. We had something from the judge saying, suspicion is not enough. You must show knowledge. So apparently, according to district court, a dual instruction based on that wouldn't have been appropriate, and I think under the case law, particularly Barone, a dual instruction wouldn't be appropriate. Moreover, I did not cite it in my briefs, but I will 28J, a case called United States v. Mills, which is 810F2nd907, in which this Court said the government was trying to uphold a conviction that was being attacked for sufficiency, and the Court said there wasn't sufficient evidence on a substantive count. The government said, well, we could have gotten them on a Pinkerton theory, on a conspiracy theory. And the Court said, now, the jury wasn't instructed on that. The jury didn't convict on that. We're essentially not going to usurp the jury's role and convict them ourselves on a theory that was never presented to the jury. I'd like to turn to the instruction issue real quickly. And what I'd like to say is controlled substance was in the indictment. Controlled substance is what's in the statute. Controlled substance is defined at 21 U.S.C. 8026. It includes some things, excludes other things. I made the point to the district court that in addition to that definition, that controlled substance also doesn't include listed chemicals. It doesn't include alcohol for a minor. Certain things that we would clearly argue if the jury were properly instructed. The district court nevertheless gave this prohibited drug instruction, which isn't supported anywhere in the statutes. And this Court's case law on the Fifth Circuit case, which I cite Loughred, made clear that the instruction should track the statute. That instruction is the model Ninth Circuit jury instruction, isn't it? Yes, and unfortunately those are often incorrect. That's been my experience. They're often incorrect. They're not controlling. I'm not even sure if a Ninth Circuit judge sits on the panel that comes up with those instructions. I think maybe not. I think it's district court judges. And in this case, there's just no authority for prohibited drug. But also the judge then goes on to define prohibited drug as something that's inherently illegal, such as, and then she almost tracks my client's statements or the agent's statements as far as marijuana, cocaine, heroin. Which would all be controlled substances. And if the jury were to find that your client was transporting those things, would be entitled to convict. If he knew that he was transporting those things. Right, that's correct. The problem is, of course, is that subtle persuasive effect in that they track almost exactly the statement the agent says was given to my client. But inherently illegal is very amorphous too. A lot of things are inherently illegal. But if the judge has defined what prohibited drugs are and defines them in terms of controlled substances, and even though the district court enumerated those things, that would correct any ambiguity between the statutory language controlled substance and the language of the instruction prohibited substance. But before she gives some of the examples, she says, and I don't have a problem with the examples. I think maybe there should be more examples. Also, the things that are excluded, it should be told to the jury that those are excluded. Had you presented any evidence that he was transporting alcohol or birds or anything else? Well, no, but the question is what he had knowledge of. Did he specifically? I didn't have a lot, but the knowledge is sort of a different problem from whether we have a disconnect between the phrase controlled substance and prohibited drugs. Well, I think the biggest problem with prohibited drug is she first, the district court first defined a prohibited drug as something that's inherently illegal, which I think is very amorphous. What does it mean? And then she gives the example of marijuana. Well, marijuana, is that inherently illegal? It grows out of the ground. It's not, it gives a sense that it's malignancy. Really, it's malignant prohibited. But in that case, that would seem to be a narrowing instruction, wouldn't it? Okay, but there are many things that are prohibited to possess. There are certain prescription drugs. The FDA doesn't allow them. You can't possess them. They're not mood-altering. They're not controlled substances. There are certain chemicals that are illegal to possess in certain contexts. They're not mood-altering. They're not even in the category of the drugs that she's suggesting. I think probably the best point is the listed chemical thing. But, again, he could have thought he was bringing all sorts of stuff across the border. He could have thought that he was bringing stolen property. There is no testimony on this. And, you know, I know the Court might say, well, you know, it looks pretty much like it was close enough. But the jury was out for 4 hours and 20 minutes on this. The jury did see Agent Grillo and did see Agent Grillo's testimony and did have a chance to assess the reliability of the government's case and all the evidence. And the jury was very concerned about this issue. And the jury was out considering it for a long time and returned notes showing that they were considering it. Okay. You're over your time. So we'll give you one minute for rebuttal and hear from the judges. Thank you. May it please the Court, Patrick McCool again on behalf of the United States. I'll try to keep my facts straight, Your Honors. After many questions, I think I probably exhausted, Your Honors, relative to routine, non-routine search. So I won't address that point except that the government's view, of course, is a bumper, or as far less sacrosanct than a sending unit of a gas tank. On the detention arrest issue. Let's pause on that and examine it. Let's not. Okay. On the detention arrest issue, I do think the one fundamental factual disagreement that the government has with the defense is the defense says that he was taken and left in a holding cell. And I think the facts are clear in this case. That's not the case that he was taken to a security office where the handcuffs were removed. I'm talking about ER 187, and he was left in the security office while the vehicle was searched. I think that's a fundamental distinction because that distinguishes this case from Butler, where the person was left in a holding cell, his belt was removed, his shoes were confiscated. And this makes this really a case like Bravo and Hernandez, where it's clear it was detention, even though there was temporary handcuffing. The last issue, Your Honor, regarding the jury instruction, I feel kind of sorry for the district court, and I'm wondering exactly what the district court is supposed to do. District court gave a model instruction. We have this court in the United States Vallejo saying the following. Although district court judges are not required to give model jury instructions, the Ninth Circuit model jury instructions correctly state the law under 21 U.S.C. 952 and 960. And that's the exact instruction that was given by the district court in this particular case. So that really brings us to the notes issue. And I think that the difficulty with the defense position is that the notes were being used really in two senses. One, it was being used arguably for impeachment, but really the defense was trying to use the notes as substantive evidence for their theory of the case. And you're not allowed to do that because that contravenes the hearsay rule. And the reason we know that they were being used in that fashion is that the defense was referring to the notes from the very beginning of this case, even an opening statement, before the witness ever testified and before the witness possibly could be impeached. And I'm reading from ER 172. Agent Grillo originally, you'll see here, wrote drugs would be in the car. But that's not what Rick told Mr. Cruz, and that's not what Mr. Cruz told Agent Grillo. So Agent Grillo apparently scratched that out and wrote stuff, and we're using stuff euphemistically, the expletive for stuff. That's what he told him was going to be in the car. And then Agent Grillo said, well, you know, that stuff could mean heroin, cocaine, marijuana, or any other drugs. That's what he said. He said, well, yes, I know it could be that. So we basically have use in opening statement, and I wasn't trial counsel, but apparently there was a blowup where the notes were referred to and specifically read in opening statement. And we have this substantive use of the notes in a way that wasn't permissible. So when it came time for the cross-examination, we have the district court sustaining a hearsay objection to the use of the notes in that fashion. We have defense counsel saying, but you can impeach, and the court saying, yes, you can impeach, but you can do so without having the notes themselves in evidence. I'm reading ER-399. And the district court also said ER-404, but you've made your point with the jury. So what important ‑‑ I'm sorry. If the ‑‑ if there was an inconsistent statement in the notes, then why wouldn't it be proper to introduce that inconsistent statement as impeachment, the notes itself? Then it's not hearsay. It's not offered for the truth. It's offered for pure impeachment. I agree with Your Honor. And I think what this case boils down to, the district court could have let the notes themselves come into evidence. But I believe the district court, given the substantive use and not wanting the notes to be overused, decided that the impeachment would be the traditional cross-examination with the question being read instead of the notes themselves physically being allowed into evidence. She could have done it. She could have done it that way. It would not have been improper to do it that way. And I guess it would not be improper for the government at a time when we're trying to do something like that for the notes themselves to come into evidence. But the question is, did the district court judge error or was there reversible error because there was one form of impeachment versus another? And I don't think so. This case is just like United States v. Higa. The government wanted to impeach the defendant by grand jury transcript. And the court said, no, I'm not going to let you introduce the transcript itself, but I will let you read it into evidence. And here's what happened in this case. Agent Grillo testified that Cruz Martinez said that he was told the word stuff would be in the car and that he knew stuff was drugs. And we have that at ER 282, 284, 382, 385. Cross-examination, defense counsel brought out that his notes were accurate and that the accurate notes reflect that he knows stuff could be or mean to be heroin, cocaine, marijuana or any other drug. That's at ER 402. And that the agent was the one who offered the specific options. In other words, basically that the defendant said yes to a leading question. It wasn't that it was so much out of his own mouth, but he said yes. And that he also was impeached by bringing out the fact that the notes don't say that he knew there were drugs. So, again, you have one form of impeachment by how the questions were asked versus the notes themselves physically being admitted into evidence. And, again, whether the judge should have done it that way or could have done it the other way, I think really is it's a discretionary ruling for the district court. She was mindful of how that they had been used substantively by defense counsel in opening statement and probably thought that it was less confusing for the jury or the jury would not have made, there would not have been the danger of substantive use if you had the form of impeachment this way versus the other way. I don't think that she erred in that. I think it was discretionary ruling by the district court who was allowed to control the method and form of evidence coming before the court. But if there was error at all, I don't think that, I think that the error was harmless and it was not reversible. Asked any questions from the court, I'll submit. Okay. Thank you. All right. Thank you very much. Regarding the notes issue, what is the district court supposed to do? I didn't stand back to the district court. I made it very clear what I was asking for. The district court should have done what I asked for. It was correct. It was within the statute, within the indictment. It was clear. The government's reliance on Vallejo is totally misplaced. Vallejo never addressed this issue. I was trial and appellate counsel and Vallejo never even hinted at it. What Vallejo did say, though, on a bigger level is the court shouldn't import stuff into statutes. It's not there. That's exactly what the court did. It imported prohibited drug in this definition that's nowhere found in the statutes or supported in any case law. Regarding Bravo, the Bravo arrest factors, I deal with that in my reply brief at 23. All the factors that Bravo relies on to find that there was not an arrest are not present here. There was an arrest. Regarding the notes, government counsel says, well, you can't use the notes as substantive evidence. That is the traditional rule. It doesn't make a lot of sense, but there are two answers to that. One, you certainly can use prior inconsistent statements to hammer someone across examination and get them to admit that, whoop, you know, I didn't testify correctly. The truth is actually this, in which case then I have substantive evidence as to what's said. Furthermore, and that point is made exactly in this Court's Tavares case, which is cited in my reply brief at 5. As far as the district court not wanting the notes to be overused, there's no support for that. The district court didn't think that it was limiting how the notes were used. The district court thought the notes were hearsay. The district court said it repeatedly. I think this is hearsay. That's why you can't bring it in. This wasn't some limiting within discretion. But even if it was an attempt at that, the Supreme Court trumps that. The Supreme Court in Gordon makes clear you get to bring in the notes because the notes are important. The document is important to emphasize the point. It's the best evidence and to show the contradiction. And finally, as far as the ---- But you brought the contradiction up in cross-examination, didn't you? Well, I was trying to, but I think if you read through it, you'll see it's a real mess. Even at one point, the district court judge says this is confusing. I don't know exactly what I can do. I start asking, well, don't your notes say? And she says, no, you can't do that. This is hearsay. Just ask them about the notes. Well, how am I going to ask them about the notes without saying what the notes say? It was a very difficult line to tow, and I was having a very difficult time doing it. And that is me ---- that I didn't do a very good job, and I don't fault myself because it was tough, is made clear by the jury's notes and by the fact that they were out for four and a half hours. Doesn't that indicate the jury considered it all? I mean, the jury took their time. They looked at this thing very carefully. They understood your argument, and they spent a good deal of time analyzing the evidence. Well, I guess that's a catch-22 situation for me. If they never asked anything about it at all, then probably they weren't confused. If they asked something about it, then they were confused. I think the notes probably ---- Because they wanted to be sure they understood it and because it's central to your defense. And there was a readback. And I don't ---- and I think the readback didn't make it much more clear. Whereas, if I had this big blow-up to show them exactly what was said, it would have been a real easy cross-examination. It would have been a real easy closing. That was not what was done here. And, again, Gordon emphasizes the Supreme Court cases. I think we've got the point on that one. If I may just say regarding Higa, the case the government relies on, as far as the district court saying, well, you could just read from the transcript. Number one, the transcript was read from in that case. Number two, I don't see anywhere in that case the issue of actually introducing the transcript was brought up. They just chose to read from the transcript. The government didn't say, well, we should be able to read it. And the district court says no. I mean, of course, because if there were a problem with that, the defendant would have won in double jeopardy. They wouldn't have the appeal. Okay. Thank you. Thank you both for good arguments. The case argued will be submitted.
judges: Fisher, Bybee, Mahan